**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JUAN ESTEBAN MONTANO-GORDILLO,

*Petitioner,*

v.

J. L. JAMISON, et al.,

*Respondents.*

CIVIL ACTION
NO. 26-3030

**Pappert, J.**                                            **July 6, 2026**

**MEMORANDUM**

The Government arrested and detained Juan Esteban Montano-Gordillo, a "noncitizen" from Colombia, under 8 U.S.C. § 1225(b)(2) without a bond hearing.  He filed a *habeas* petition challenging his detention and alleging violations of the Immigration and Nationality Act and the Fifth Amendment's Due Process Clause.  The Court granted the petition and, without ruling on his due process claims, ordered that Montano-Gordillo was not subject to mandatory detention under § 1225(b)(2) and could instead be detained, if at all, pursuant to the discretionary provisions of 8 U.S.C. § 1226(a).  The Order required the Government to provide him with a bond hearing before an immigration judge within a week and allowed him to appeal that decision to the Board of Immigration Appeals.

The immigration judge held the hearing and, after considering all the evidence, denied bond because Montano-Gordillo did not prove he wasn't a flight risk.  Instead of appealing to the BIA, Montano-Gordillo now moves for reconsideration to address his due process claims or alternatively to enforce the Order and immediately release him. The Court denies the motion.

1

I

Under Federal Rule of Civil Procedure 59(e), a motion for reconsideration to alter or amend a judgment should be granted only where the moving party shows: "(1) an intervening change in the controlling law, (2) the availability of new evidence that was not available when the court [made its initial decision] or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *United States ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 848–49 (3d Cir. 2014) (citation modified and omitted).  Reconsideration "should be granted sparingly" because "federal courts have a strong interest in the finality of judgments." *Cont'l Cas. Co. v. Diversified Indus., Inc.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995).  A losing party cannot use such a motion to "relitigate old matters, raise argument, or present evidence that could have been raised prior to the entry of judgment." *Boretsky v. Governor of N.J.*, 433 F. App'x 73, 78 (3d Cir. 2011) (quoting *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009)).

Montano-Gordillo apparently relies on (2) and (3).  He contends the Court should amend its Order to address his due process claims and assess "new evidence" related to his detention.  (Pet'r's Mem. of L. at 14, Dkt. No. 8-1.)

A

The Court granted Montano-Gordillo's petition based on his INA claim but did "not address his due process claim[s]." (May 18, 2026 Ord. ¶ 1 n.1, Dkt. No. 7.)  He alleges the Court must do so now to "complet[e] its duty under Federal Rule of Civil Procedure 54(b) to resolve all of a party's claims." (Pet'r's Mem. of L. at 9.)  The Government also purportedly redetained him "without a valid changed circumstance or

a pre-deprivation bond hearing," (*id.*), and continues to detain him after the bond hearing, *see* (Pet'r's Reply at 3, Dkt. No. 11).  And "the remedies that might cure [his] constitutional violations differ from the Section 1226(a)-bond hearing that cured [his] statutory violation."  (*Id.*)

None of those arguments warrant reconsideration.  A "longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."  *Camreta v. Greene*, 563 U.S. 692, 705 (2011) (citation omitted); *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring).  The Court did not rule on Montano-Gordillo's due process claims because doing so was unnecessary.  His INA claim provided an alternative basis for relief.  *See, e.g.*, *Bah v. Warden, Moshannon Valley ICE Processing Ctr.*, No. 26-cv-752, 2026 WL 1600632, at *1 n.1 (W.D. Pa. June 4, 2026) (avoiding a petitioner's due process claim where the INA provided grounds for relief); *Sanchez Carrillo v. Blanche*, No. 26-1229, 2026 WL 1506192, at *4 n.10 (M.D. Pa. May 29, 2026) (same); *Murodov v. Jamison*, No. 26-594, 2026 WL 413440, at *3 (E.D. Pa. Feb. 13, 2026) (same); *Alekseev v. Warden, Phila. Fed. Det. Ctr.*, No. 26-462, 2026 WL 413439, at *4 (E.D. Pa. Feb. 13, 2026) (same); *Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243, at *1 (E.D. Pa. Nov. 18, 2025) (same).

Nor does Federal Rule of Civil Procedure 54(b) create a "duty" to deicide his due process claims.  Rule 54(b) provides:

> When an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties

> and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). That rule allows a district court to "convert an order adjudicating less than an entire action to the end that it becomes a 'final' decision over which a court of appeals may exercise jurisdiction under 28 U.S.C. § 1291." *Elliott v. Archdiocese of N.Y.*, 682 F.3d 213, 219 (3d Cir. 2012) (emphasis added). So nothing in Rule 54(b) obligates this Court to "resolve all of a party's claims." (Pet'r's Mem. of L. at 9.)

The purported difference in relief between the INA and due process claims doesn't help Montano-Gordillo either. He thinks the remedies differ between the two, *see* (Pet'r's Reply at 3), but cites nothing to support that proposition. To the contrary, courts have not released petitioners even after finding due process violations. *See, e.g.*, *Flores Castro v. Warden, Pike Cnty. Corr. Facility*, No. 26-CV-1396, 2026 WL 1736993, at *4 (M.D. Pa. June 26, 2026); *Sancez Gomez v. Sage*, No. 26cv1031, 2026 WL 1786762, at *5 (M.D. Pa. June 22, 2026); *Restrepo v. Jamison*, 823 F. Supp. 3d 529, 549 (E.D. Pa. 2026); *Ochoa v. Rose*, No. 25-7021, 2025 WL 3725042, at *5 (E.D. Pa. Dec. 24, 2025); *Kumar v. McShane*, No. 25-6238, 2025 WL 3722005, at *7 (E.D. Pa. Dec. 23, 2025); *Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025). In any event, *habeas* courts have "the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). "Indeed, common-law *habeas corpus* was, above all, an adaptable remedy. Its precise application and scope changed depending upon the circumstances." *Id.* (collecting cases).

Ordering a bond hearing was more appropriate than releasing Montano-Gordillo for at least five reasons.  First, his allegations stem from the Government denying him a bond hearing, *see* (Pet. ¶¶ 2–5, 25, 30–31, 40, Dkt. No. 1), so that relief was tailored to his injury.  Second, he was still subject to detention under § 1226(a) because he is a "noncitizen" who entered this country by crossing the border with Mexico.  *See* (Pet. ¶¶ 6, 17); (May 18, 2026 Ord. ¶ 1); *accord* 8 U.S.C. § 1226(a) (providing that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States").  Third, the May 18 Order "decline[d] to require the Government to engage in the formalistic exercise of releasing and rearresting [Montano-Gordillo] in order to lawfully detain him under [§ 1226(a)]."  *Gonzales Duran v. Arteta*, No. 26-cv-3925, 2026 WL 1587421, at *2–3 (S.D.N.Y. June 3, 2026) (citation modified).  Fourth, "§ 1226(a) does not require release—it provides DHS discretion to grant an alien release on bond."  *Hernandez v. Baltazar*, No. 25-cv-3094, 2025 WL 2996643, at *8 (D. Colo. Oct. 24, 2025) (citation modified and omitted).  And fifth, courts have, time and again, decided against releasing aliens unlawfully detained under § 1225(b)(2) and instead ordered a bond hearing.[1]

---

[1]    For cases in the Third Circuit, see, e.g., *Flores Castro*, 2026 WL 1736993, at *4; *Sanchez Gomez*, 2026 WL 1786762, at *5; *Sanchez Carrillo*, 2026 WL 1506192, at *6; *Bah*, 2026 WL 1600632, at *2; *Restrepo*, 823 F. Supp. 3d at 548–49; *Castillo Reyes v. Rose*, 820 F. Supp. 3d 343, 352 (E.D. Pa. 2026); *Alekseev*, 2026 WL 413439, at *1; *Murodov*, 2026 WL 413440, at *3; *Jeireb v. Jamison*, No. 26-70, 2026 WL 313460, at *1–2 (E.D. Pa. Feb. 5, 2026); *Vasquez-Rosario v. Noem*, No. 25-cv-7427, 2026 WL 196505, at *1 (E.D. Pa. Jan. 26, 2026); *Ochoa*, 2025 WL 3725042, at *5; *Kumar*, 2025 WL 3722005, at *7; *Cantu-Cortes*, 2025 WL 3171639, at *2; *Demirel*, 2025 WL 3218243, at *1.
    For the cases elsewhere, see, e.g., *Gonzalez Torres v. Warden of Baker Cnty. Det. Facility*, No. 26-cv-303, 2026 WL 1900265, at *2 (M.D. Fla. July 2, 2026) (order); *Renteria Perez v. Divver*, No. 26-cv-3409, 2026 WL 1897803, at *1–2 (S.D. Cal. June 30, 2026) (order); *Mendez Quintana v. Divver*, No. 26cv3470, 2026 WL 1881581, at *1 (S.D. Cal. June 29, 2026) (order); *Sierra-Garcia v. Baltazar*, No. 26-cv-2606, 2026 WL 1805575, at 2 & n.4 (D. Colo. June 23, 2026); *Okujava v. Baltasar*, No. 26-cv-2123, 2026 WL 1693801, at *3 (D. Colo. June 11, 2026); *Gonzales Duran*, 2026 WL 1587421, at *2–3; *Barrios Arroyo v. ICE Field Off. Dir.*, No. 26-cv-994, 2026 WL 1396575, at *3 (W.D. Wash. May 19, 2026) (order) (collecting cases); *Alymkulov v. Mullin*, No. 26-cv-1581, 2026 WL

B

Montano-Gordillo's "new evidence" fails for similar reasons. DHS officials detained and released him into the country in 2022 on the condition he attend appointments with ICE. (Pet. ¶¶ 18, 20.) He did so on May 4, 2026, but ICE officials "advised [him] he was being taken into custody pursuant to a Notice to Appear." (Form I-213 at 3, Mot. Ex. 1, Dkt. No. 8-4.) The Form I-213 also said he was detained "due to available bed space." (*Id.*) Montano-Gordillo contends that form "shows beyond a doubt that [his] re-detention . . . was not based on any changed circumstances since his initial release from detention." (Pet'r's Mem. of L. at 16.)

This evidence does not demand reconsideration. Even with the Form I-213, the Court still would have "avoid[ed] reaching constitutional questions" because his detention without a bond hearing was unlawful under the INA. *See Camreta*, 563 U.S. at 705. Nor does the Form I-213 require releasing Montano-Gordillo rather than ordering a bond hearing. *See supra* Section I.A.

---

1282760, at *4 (D. Colo. May 11, 2026); *Goncalves v. Wesling*, No. 26-cv-311, 2026 WL 1256190, at *2 (D.N.H. May 7, 2026) (order); *Aguayo Montes v. Hildenbrand*, No. 26-CV-919, 2026 WL 1413066, at *3 (N.D. Ohio May 20, 2026) (order); *Benitez v. Larose*, No. 26cv2126, 2026 WL 1162759, at *2 (S.D. Cal. Apr. 29, 2026) (order); *Martinez-Lopez v. Reid*, No. 26 Civ. 2893, 2026 WL 1133933, at *1 (S.D.N.Y. Apr. 27, 2026); *Sharifzoda v. Orange Cnty. Jail*, No. 26-CV-2486, 2026 WL 851378, at *2–3 (S.D.N.Y. Mar. 27, 2026) (collecting cases); *Mendez Roblero v. Bondi*, No. 26-cv-1550, 2026 WL 773740, at *3, *5 (E.D. Cal. Mar. 19, 2026) (order); *Gao v. Castro*, No. 26-cv-472, 2026 WL 776488, at *6–7 (D.N.M. Mar. 19, 2026) (collecting cases); *Rodriguez-Jandrez v. Olson*, No. 25-cv-248, 2026 WL 532339, at *3 (S.D. Ind. Feb. 26, 2026) (order); *Fernando C. C. v. Bondi*, No. 26-cv-1235, 2026 WL 446408, at *6 n.7 (D. Minn. Feb. 17, 2026) (order); *Mohammadi v. Noem*, No. 26-cv-32, 2026 WL 369861, at *4–5 (D. Nev. Feb. 9, 2026) (order); *Rodrigo M. v. Bondi*, No. 26-cv-1069, 2026 WL 327938, at *2 (D. Minn. Feb. 8, 2026) (order); *Dambreville v. Noem*, No. 25-cv-514, 2026 WL 602174, at *4–5 (S.D. Iowa Jan. 12, 2026) (order); *Morales Perez v. Walsh*, 820 F. Supp. 3d 732, 740 (N.D. Ill. 2026); *Hernandez v. Bondi*, No. 25-cv-1680, 2025 WL 3687353, at *9 & n.5 (W.D. Mich. Dec. 19, 2025); *Gallegos Valenzuela v. Olson* , 811 F. Supp. 3d 951, 964–65 (N.D. Ill. 2025); *Lima v. Warden, Robert A. Deyton Det. Facility*, No. 25-CV-6304, 2025 WL 4074642, at *4 (N.D. Ga. Nov. 18, 2025) (order); *Gomes v. Hyde*, 804 F. Supp. 3d 265, 278 (D. Mass. 2025) (collecting cases); *Hernandez*, 2025 WL 2996643, at *8; *Belsai D.S. v. Bond*, 810 F. Supp. 3d 1016, 1025 (D. Minn. 2025); *Alvarez Ortiz v. Freden*, 808 F. Supp. 3d 579, 601 (W.D.N.Y. 2025).

Rather than seek reconsideration, Montano-Gordillo's remedy is an appeal to the BIA—something he recognizes he can do. *See* (Pet'r's Reply at 5–7); (May 21, 2026 Ord. of Immigr. Judge at 3, Mot. Ex. 4, Dkt. No. 8-7 (reserving right to appeal by June 19, 2026)). He could alternatively request a bond redetermination from the immigration judge, *see* 8 C.F.R. § 1003.19(e), and appeal that decision should he disagree, *see* 8 C.F.R. § 236.1(d)(3). "What [Montano-Gordillo] can't do is use [a motion for reconsideration] to circumvent the administrative appellate process." *See Jeireb*, 2026 WL 313460, at \*2; *see also Hugo A. A. Q. v. Green*, No. 17-5755, 2018 WL 3993456, at \*3 (D.N.J. Aug. 21, 2018) ("To the extent Petitioner is dissatisfied with the [immigration judge's] decision at his . . . bond hearing, his remedy is to appeal that decision to the BIA or seek another bond re-determination . . . .").

## II

Montano-Gordillo also requests the Court "enforce" the May 18 Order because his bond hearing "was constitutionally inadequate and not sufficiently individualized." (Pet'r's Mem. of L. at 10.)

## A

The Government first claims Montano-Gordillo has not properly exhausted his administrative remedies. (Gov't's Resp. in Opp'n at 4, Dkt. No. 10.) Petitioners "are ordinarily required to exhaust their administrative remedies before petitioning for a writ of *habeas corpus* pursuant to § 2241." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (collecting cases). Exhaustion may be excused if an attempt to obtain relief is futile. *Cerverizzo v. Yost*, 380 F. App'x 115, 116 (3d Cir. 2010). A futile

argument is not the same, however, as one that would likely fail if it had been raised. *See Parker v. Kelchner*, 429 F.3d 58, 63 (3d Cir. 2005).

Montano-Gordillo can raise his unexhausted due process claims because he "has no administrative recourse" before the BIA. *Basilio v. Att'y Gen. of U.S.*, 439 F. App'x 146, 149 (3d Cir. 2011). The BIA lacks "jurisdiction to adjudicate constitutional issues," rendering it "incapable of addressing the due process claim[s] presented here." *Qatanani v. Att'y Gen. U.S. of Am.*, 144 F.4th 485, 500 (3d Cir. 2025) (citation omitted). Such claims "generally [are] exempt from the exhaustion requirement" because raising them would be futile. *See Basilio*, 439 F. App'x at 149; *see also Castillo Reyes*, 820 F. Supp. 3d at 349 (E.D. Pa. 2026) (excusing an unexhausted due process claim); *Barradas Jacome v. Att'y Gen. U.S.*, 39 F.4th 111, 120 (3d Cir. 2022) (requiring exhaustion only where the "claim was within the jurisdiction of the [agency] to consider").

## B

Although exhaustion does not bar his claims, Montano-Gordillo cannot show the bond hearing violated due process. "In the administrative context, an alien: (1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her, (2) must be allowed to make arguments on his or her own behalf and (3) has the right to an individualized determination of his [or her] interests." *Kamara v. Att'y Gen. of U.S.*, 420 F.3d 202, 211 (3d Cir. 2005) (citation modified and omitted). A bond hearing is individualized if it is not "so arbitrary that it would offend fundamental tenets of due process" and provides "a discernible basis for the underlying administrative decision." *Vasquez-Rosario*, 2026 WL 395711, at *2 (citation omitted). To prove a due process violation, an alien must show he did not receive these

protections.  *See Kamara*, 420 U.S. at 211; *see also Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018) (noting the burden "remains on the detainee at all times" when they are detained under § 1226(a)).

Montano-Gordillo contends the immigration judge did not conduct an individualized inquiry into his prospective flight risks and instead relied on a "preemptive adjudication" of his application for bond.  *See* (Pet'r's Mem. of L. at 22). The judge purportedly never "identif[ied] any changed circumstances," "impermissibly speculated about [his] claim for relief," and "failed to consider whether a monetary bond amount . . . could mitigate any flight risk."  (*Id.* at 23–25.)

Montano-Gordillo's submissions contradict his claims.  As he acknowledges, he "submitted over one hundred pages of evidence and a legal brief in support of his eligibility for release on bond."  (Pet'r's Mem. of L. at 12.)  That included a declaration explaining why he fled Colombia, employment authorization documents, his driver's license, and twenty-four letters in support.  *See generally* (Evid. in Supp. of Bond, Mot. Ex. 2, Dkt. No. 8-5).  Counsel briefed this evidence, argued he was not a danger to the community or a flight risk, *see generally* (Br. in Supp. of Bond, Mot. Ex. 3, Dkt. No. 8-6), and reiterated those points during the May 21 bond hearing, *see* (Bond Hr'g Tr. at 0:23– 3:11, 3:13–5:45, 6:28–7:07, 8:06–57, Mot. Ex. 5, Dkt. No. 8-8).

More to the point, the immigration judge made individualized determinations in denying bond.  She "considered several factors in determining flight," such as his age, reasons for leaving Colombia, ties to the United States, and unlawful entry.  *See* (*Id.* at 8:57–10:04, 10:13–11:09, 11:45–12:46).  His young age raised concerns about his "maturity" and "whether or not he is actually going to follow all the rules."  (*Id.* at 8:57–

10:04.)  That also mattered because "[i]f a person doesn't have an avenue to relief and they know that . . . they have no incentive to continue to appear, especially if they're ordered removed."  (*Id.*)  Montano-Gordillo claimed he had "fled" Colombia due to violent paramilitary groups, but the judge could not credit those claims because the Colombian government was "not complicit" in the violence.  (*Id.* at 10:13–11:09.)  She then denied bond because "no amount of bond will mitigate his risk of flight," *see* (*id.*), and explained her decision further:

> No, I also look at manner of entry, limited ties to the United States, the fact that his family is here, they have no lawful status.  So I don't consider that a tie to the United States.  And I don't consider that as a mitigator for flight because they're not here lawfully.  His family, the ones that are not in removal proceedings, are not doing just that.  They're living here unlawfully, not in removal proceedings.  So he could choose to do the same thing, not appear for any immigration matters, just as the rest of his family has been doing.  So no, that's not the sole reason. . . .

(*Id.* at 11:45–12:36.)  The bond order repeated many of these reasons.  *See* (May 21, 2026 Ord. of Immigr. Judge at 2).  Taken together, the immigration judge articulated a discernible basis for denying bond in light of Montano-Gordillo's evidence and circumstances.  *See Vasquez-Rosario*, 2026 WL 395711, at *2 (denying motion to enforce where the immigration judge provided specific reasoning for denying bond "based on facts presented by the [p]arties, and had a rational basis"); Ord. at 4, *Kumar v. McShane*, No. 25-6238 (E.D. Pa. Feb. 23, 2026), Dkt. No. 23 (same where the immigration judge denied bond based on an alien's "limited ties to the community," "his recent entry into the United States," and his "speculative" asylum claims); Ord. at 2 n.3, *Smanov v. Rose*, No. 26-211 (E.D. Pa. Mar. 3, 2026), Dkt. No. 14 (same where "[p]etitioner's challenge is essentially just a disagreement with the immigration judge's decision to deny bond").

Montano-Gordillo's arguments boil down to disagreements with the decision to deny bond. But "just because there are disagreements about the outcome of the bond hearing . . . does not mean that the [immigration judge] violated due process in conducting the bond hearing." *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *3 (3d Cir. Feb. 25, 2022) (citation modified). Nor is "[a] motion to enforce a judgment . . . the proper avenue to relitigate the merits of a bond order." *Id.*, at *2–3. Again, the right place to do so is the BIA—not this Court.[2]

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.

---

[2] To the extent Montano-Gordillo seeks direct review of the bond order, that is not the Court's role. Congress has "expressly forbidden" direct review of an immigration judge's bond decision. *Borbot*, 906 F.3d at 279; *see also* 8 U.S.C. § 1226(e) ("No court may set aside any action or decision by the Attorney General under [§ 1226] regarding the detention of any alien or the revocation or denial of bond or parole."); *Lopez–Morales v. Green*, No. 17-12975, 2018 WL 2175775, at *2 (D.N.J. May 11, 2018) ("District courts sitting in *habeas* review therefore have no jurisdiction to review the decision of an immigration judge denying bond.").